Lanzinger, J.
{¶ 1} We accepted this discretionary appeal by the state of Ohio from a judgment of the Eighth District Court of Appeals that reversed a conviction of aggravated murder because it was not supported by sufficient evidence of prior calculation and design. During a bar fight, Dajhon Walker knowingly killed Antwon Shannon, and for that act, Walker was properly convicted of felony *410 murder under R.C. 2903.02(B). But the evidence did not show that this killing was done with prior calculation and design as required to sustain a conviction for aggravated murder. The elements of purpose and of prior calculation and design are distinct, and the state must prove both to support a conviction of aggravated murder under R.C. 2903.01.
{¶ 2} We therefore affirm the judgment of the court of appeals.
RELEVANT FACTS

Trial Evidence

{¶ 3} Antwon Shannon was killed during a bar fight that took place in the early-morning hours of February 19, 2012, at the Tavo Martini Lounge, a Cleveland night club. Although the state presented witness testimony and the testimony of detectives and forensic experts at the jury trial, the primary evidence of the sequence of the events came from video footage recorded by 16 surveillance cameras located in and around the club.
{¶ 4} The videos show that the victims, Antwon Shannon and Ivor Anderson, arrived at the club at approximately 12:27 a.m. and that they then began to drink and socialize. At 1:56 a.m., they were on the dance floor when Robert Steel, who also was dancing, began to twirl a glass of champagne in the air. Some of Steel’s champagne spilled on Anderson, who responded with a remark. After dancing a bit longer and talking to a friend who was drinking champagne from a bottle, Steel began to talk to a group of people who were not identified at trial.
{¶ 5} Meanwhile, Walker, Derrell Shabazz, and Otis Johnson were in a different area of the club, drinking and intermittently stopping to chat with one another in an outside hallway. At 2:01, Johnson made his way from the outside hallway onto the dance floor and over to Steel and the others, followed a minute later by Walker and Shabazz. The group talked on and off for the next nine minutes, repeatedly looking in the direction of Anderson and Shannon. The melee began at 2:11 a.m., when Steel ran at Anderson from behind and hit him with a champagne bottle that glanced off Anderson and hit Eunique Worley in the forehead. Once Steel started the fight, others became involved.
{¶ 6} Walker joined in, hitting Shannon and throwing a bottle at him. Walker then hopped backwards, grabbing at his waistband, hunching over and moving to the side. Walker slipped and fell on Shannon, and Shabazz slipped and fell on Walker. All three recovered and stumbled in different directions: Shannon moved away from the fight, Walker went out of the cameras’ view to the corner of the room behind a pillar, and Shabazz went over to Johnson, who, apparently by mistake, was hitting a member of their own group. A woman who had joined in the fight shoved Anderson backwards, propelling the group to the corner where *411 Walker had gone. The video footage shows a gunshot flash a few seconds later with everyone in the club scattering. Walker appeared from the other side of the pillar fumbling with his waistband, and he and Shabazz hurried out of the area together.
{¶ 7} Shannon was shot in the back from a distance of one to two feet by a .45-caliber bullet, which passed through his chest. Shannon died soon after.

Convictions and Appeal

{¶ 8} The Cuyahoga County Grand Jury indicted Walker and Shabazz for aggravated murder, felony murder, having weapons while under a disability, and six counts of felonious assault (three pertaining to Shannon, one to Anderson, and two to Worley), along with firearm specifications. At a joint trial with Shabazz, the jury acquitted Walker of the felonious-assault counts pertaining to Worley but found him guilty of aggravated murder, felony murder, and four counts of felonious assault, and the trial court found him guilty of having a weapon while under a disability. Shabazz was sentenced to 22 years to life in prison, and Walker was sentenced to 25 years to life.
{¶ 9} Walker appealed to the Eighth District Court of Appeals, arguing that his aggravated-murder conviction was not supported by sufficient evidence. The appellate court agreed and concluded that the state had failed to establish that Walker acted with prior calculation and design. 2014-Ohio-1827, 10 N.E.3d 200, ¶ 21 (8th Dist.). Relying on the standard set forth in State v. Taylor, 78 Ohio St.3d 15, 676 N.E.2d 82 (1997), the court held that there was no evidence that Walker and Shannon knew one another, that the shooting occurred from a spontaneous eruption of events, and that there was no evidence Walker gave thought to choosing the murder site beforehand. The court therefore reversed the conviction for aggravated murder but upheld the convictions for felony murder and the remaining offenses and remanded the matter to the trial court for resentencing.
{¶ 10} Shabazz also appealed his convictions and sentence. Relying on its decision in Walker’s appeal, the Eighth District Court of Appeals vacated Shabazz’s aggravated-murder conviction. State v. Shabazz, 8th Dist. Cuyahoga No. 100021, 2014-Ohio-1828, 2014 WL 1775686. The appellate court also vacated Shabazz’s felony-murder and weapons-disability convictions, which were based on his complicity in Walker’s use of a firearm, as well as a felonious-assault conviction that was based on complicity. It affirmed Shabazz’s two remaining felonious-assault convictions, which were based on the use of champagne bottles. We initially accepted the state’s appeal, but we later dismissed it as having been improvidently accepted. State v. Shabazz, 146 Ohio St.3d 404, 2016-Ohio-1055, 57 N.E.3d 1119.
*412 {¶ 11} We accepted the state’s appeal in Walker’s case on two propositions of law: one regarding appellate review of sufficiency arguments in general and one concerning the evidence required in order to reasonably infer the element of prior calculation and design.
LEGAL ANALYSIS
{¶ 12} To determine whether a conviction is supported by sufficient evidence, “[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.” State v. Jenks, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The weight of the evidence and credibility of witnesses, however, are matters primarily for the finder of fact. State v. DeHass, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; see State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79.

Count Two: Felony Murder

{¶ 13} The jury found Walker guilty of felony murder, and the court of appeals upheld Walker’s conviction. The felony-murder statute states that “[n]o person shall cause the death of another as a proximate result of the offender’s committing or attempting to commit an offense of violence that is a felony of the first or second degree * * R.C. 2903.02(B). And with the underlying offense of violence being felonious assault, felony murder is supported by evidence that establishes that the defendant knowingly caused physical harm to the victim. State v. Miller, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498.
{¶ 14} The evidence fully supported Walker’s conviction on this count.

Count One: Aggravated Murder

{¶ 15} Under the aggravated-murder statute, the state was required to prove beyond a reasonable doubt that Walker “purposely, and with prior calculation and design, cause[d] the. death” of Antwon Shannon. (Emphasis added.) R.C. 2903.01(A). The question raised by the state is whether sufficient evidence of prior calculation and design was presented to support Walker’s conviction of aggravated murder.
{¶ 16} When the Revised Code was adopted in 1953, the crime of murder in the first degree—the precursor to aggravated murder—prohibited purposeful killing with “deliberate and premeditated malice.” Former R.C. 2901.01. Under this earlier standard, “a killing could be premeditated even though conceived and executed on the spur of the moment. The only requirement was that the *413 malicious purpose be formed before the homicidal act, however short in time.” State v. Cotton, 56 Ohio St.2d 8, 11, 381 N.E.2d 190 (1978).
{¶ 17} When it amended the aggravated-murder statute, R.C. 2903.01(A), to provide that “[n]o person shall purposely, and with prior calculation and design, cause the death of another,” the General Assembly explicitly rejected the notion that brief premeditation prior to a murder could establish prior calculation and design:
[R.C. 2903.01(A) employs] the phrase, “prior calculation and design,” to indicate an act of studied care in planning or analyzing the means of the crime, as well as a scheme compassing the death of the victim. Neither the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves, but they must be sufficient to meet the proposed test of “prior calculation and design.” In this context, momentary deliberation is considered insufficient to constitute a studied scheme to kill.
(Emphasis added.) Ohio Legislative Service Commission, Proposed Ohio Criminal Code: Final Report of the Technical Committee to Study Ohio Criminal Laws and Procedures, at 71 (1971). See also Taylor, 78 Ohio St.3d at 18-19, 676 N.E.2d 82. The General Assembly has defined the mens rea of purpose, stating that “[a] person acts purposely when it is the person’s specific intention to cause a certain result.” R.C. 2901.22(A). Evidence of purpose, however, does not automatically mean that the element of prior calculation and design also exists. State v. Campbell, 90 Ohio St.3d 320, 341, 738 N.E.2d 1178 (2000) (“purpose to kill is not the same thing as prior calculation and design and does not by itself satisfy the mens rea element of R.C. 2903.01(A)”). A purposeful killing committed with prior calculation and design is aggravated murder: “No person shall purposely, and with prior calculation and design, cause the death of another * * *.” (Emphasis added.) R.C. 2903.01(A).
{¶ 18} The phrase “prior calculation and design” by its own terms suggests advance reasoning to formulate the purpose to kill. Evidence of an act committed on the spur of the moment or after momentary consideration is not evidence of a premeditated decision or a studied consideration of the method and the means to cause a death. The General Assembly has determined that it is a greater offense to premeditate or to plan ahead to purposely kill someone. All prior-caleulation-and-design offenses will necessarily include purposeful homicides; not all purposeful homicides have an element of prior calculation and design.
*414 {¶ 19} Since the enactment of R.C. 2903.01 in 1974, we have repeatedly emphasized that there is no “bright-line test that emphatically distinguishes between the presence or absence of ‘prior calculation and design.’ Instead, each case turns on the particular facts and evidence presented at trial.” Taylor, 78 Ohio St.3d at 20, 676 N.E.2d 82; State v. Braden, 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, ¶ 61; State v. Maxwell, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 148.
{¶ 20} We traditionally consider three factors in determining whether a defendant acted with prior calculation and design: “(1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or ‘an almost instantaneous eruption of events?’ ” Taylor at 19, quoting State v. Jenkins, 48 Ohio App.2d 99, 102, 355 N.E.2d 825 (8th Dist.1976).
{¶ 21} We have upheld aggravated-murder convictions, holding that prior calculation and design existed when a defendant threatened to obtain a weapon and kill his victim and later carried out that plan. State v. Sowell, 39 Ohio St.3d 322, 333, 530 N.E.2d 1294 (1988). See also State v. Toth, 52 Ohio St.2d 206, 213, 371 N.E.2d 831 (1977), and State v. Cassano, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, at ¶ 80-84 (both upholding aggravated-murder convictions when the defendant had previously threatened to kill the victim). Shooting a person execution-style may also establish, at least in part, prior calculation and design. State v. Palmer, 80 Ohio St.3d 543, 569-570, 687 N.E.2d 685 (1997); Braden at ¶ 65, citing State v. Campbell, 90 Ohio St.3d 320, 330, 738 N.E.2d 1178 (2000).
The Taylor Case
{¶ 22} The court of appeals decided Walker’s case by applying the factors in Taylor at 19. In Taylor, another bar-homicide case, the circumstances surrounding the shooting show a scheme designed to implement the calculated decision to kill. Taylor knew his victim, who had previously dated Taylor’s girlfriend. Id. at 21-22. And knowing that the victim frequently drank at a certain bar, Taylor chose to take a gun there. He, the girlfriend, and the victim had all been drinking at the bar for 20 to 30 minutes before he shot the victim after an argument. Id. at 22. As the victim lay wounded on the floor after several shots, Taylor approached and fired three or four more shots in the victim’s back. Id. at 22. Pursuing and killing a fleeing or incapacitated victim after an initial confrontation strongly indicates prior calculation and design. State v. Conway, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 45, citing State v. Robbins, 58 Ohio St.2d 74, 78-79, 388 N.E.2d 755 (1979), State v. Claytor, 61 Ohio St.3d 234, 241, 574 N.E.2d 472 (1991), and Cotton, 56 Ohio St.2d at 9-10, 381 N.E.2d *415 190. See also Palmer, 80 Ohio St.3d at 569-570, 687 N.E.2d 685 (after victim had fallen to the ground, defendant shot the victim in the head in an execution-style manner).
{¶ 23} When examining the facts in Walker’s case in light of the questions asked in Taylor, it appears from the evidence that Walker and Shannon did not know each other, that the killing resulted from a spontaneous eruption of events, and that Walker had not given thought to choosing the murder site. Additionally, Walker did not give thought or preparation to choosing the murder weapon: from his approach to the dance floor at approximately 2:02 a.m. until the fight began at 2:11 a.m., Walker did not move from the area, meaning that the weapon was already on his person before he was even aware of Steel’s interaction with Anderson.
{¶ 24} There is no evidence that Walker and his friends devised a scheme to shoot Shannon and then carried it out. The plan that existed among the members of Walker’s group that evening was a plan to commit felonious assault, not murder. The prosecutor understood this fact because he so characterized the reason behind the murder: Shannon “died because the fight got so escalated and the poor guy was so big that two little half pints couldn’t take him over so what do you need? Your fists aren’t good enough. You take out a piece of metal * * *.” (Emphasis added.)
{¶ 25} The video recordings of the incident show nothing that was carefully planned once the fight began. It quickly turned into a free-for-all with people outside Walker’s original small group jumping in, two of Walker’s original group fighting each other, and Shannon, Walker, and Shabazz slipping and falling on top of one another. In the middle of this fight, a single shot was fired in the presence of dozens of people.
{¶ 26} Witnesses provided testimony to the jury of speculation as to what had happened,[1] but the videos show an assault that quickly escalated into chaos. For approximately 20 seconds of that chaos, Walker was obscured from the security cameras by a pillar. A jury could reasonably infer that during that time, Walker decided to kill Shannon by shooting him, but it could not reasonably infer that he planned the murder beforehand with prior calculation and design. The element of prior calculation and design requires evidence that supports more than the inference of purpose. Inferring prior calculation and design from an inference of *416 purpose is mere speculation. Accordingly, Walker’s conviction for aggravated murder was not supported by sufficient evidence.
CONCLUSION
{¶ 27} The evidence presented by the state in this case shows that Antwon Shannon was shot during a bar fight with Dajhon Walker and others. Neither the security cameras that recorded the fight nor the witnesses to the shooting were able to see who fired the shot. But the cameras did show that Walker moved away from the fight, and out of camera range, for approximately 20 seconds before the gunshot. Thus, there was insufficient evidence of prior calculation and design. We therefore affirm the judgment of the court of appeals vacating Walker’s aggravated-murder conviction.
{¶ 28} Aggravated murder is a purposeful killing that also requires proof of prior calculation and design: forethought, planning, choice of weapon, choice of means,, and the execution of the plan. In this case, there is no evidence that Walker planned Shannon’s murder beforehand. Walker knowingly killed Shannon and was properly convicted of felony murder, but he did not commit aggravated murder. We therefore affirm the judgment of the Eighth District Court of Appeals vacating the aggravated-murder conviction and remanding the cause to the Court of Common Pleas of Cuyahoga County for resentencing.
Judgment affirmed and cause remanded.
O’Connor, C.J., and Pfeifer and O’Neill, JJ., concur.
O’Donnell, J., dissents, with an opinion joined by Kennedy and French, JJ.

. For example, Anderson testified that Steel immediately began conspiring with Walker and Shabazz after spilling the champagne, but the surveillance video shows that Walker and Shabazz were not on the dance floor at that time. Anderson also testified that he believed it was Shabazz who attacked him with a champagne bottle, but the surveillance video shows that it was Steel, not Shabazz, who attacked Anderson.