[Cite as *State v. Gamble*, 2017-Ohio-1527.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

      Plaintiff-Appellee,                        :

                                         No. 16AP-397

v.                                                          :        (C.P.C. No. 15CR-2664)

Sherrod Gamble,                                     :        (REGULAR CALENDAR)

      Defendant-Appellant.                    :

---

D E C I S I O N

Rendered on April 25, 2017

---

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Barbara A. Farnbacher,* for appellee.

**On brief:** *Wolfe Van Wey & Associates, LLC,* and *Stephen T. Wolfe,* for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Defendant-appellant, Sherrod Gamble, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of aggravated murder with specifications, murder with specifications, and having a weapon while under disability. (Apr. 26, 2016 Jgmt. Entry at 1.) For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On June 2, 2015, appellant was indicted for aggravated murder, murder, and having a weapon while under disability. Additionally, the aggravated murder and murder counts contained three-year firearm and repeat violent offender ("RVO") specifications, due to appellant's prior conviction for voluntary manslaughter. (June 2,

2015 Indictment at 1-2.)   On March 14, 2016, the case proceeded to a jury trial. (Jgmt. Entry at 1.)

{¶ 3}   The following are the relevant facts pertaining to this appeal. In May 2015, appellant had been living for a few months on Roosevelt Ave. in Columbus along with his sister S.G., her fiancée K.S., and S.G.'s children, D.R., a 16-year-old male, and Z.G., an 8-year-old female. (Mar. 14-15, 2016 Tr. Vol. 1 at 53-54.)   On the evening of May 5, 2015, appellant, K.S., D.R., and Z.G. were at the apartment. (Tr. Vol. 1 at 58-61.) S.G. was working overnight as a home health aide and was not at the apartment. Appellant and K.S. were drinking beer, but initially there were no problems. Between 9:00 and 10:00 p.m., D.R. went to sleep in his bedroom, which was in the basement. (Tr. Vol. 1 at 61.)

{¶ 4}   Around 3:50 a.m., on May 6, 2015, D.R. was awakened when he heard arguing between appellant and K.S. on the main floor of the apartment.   Appellant and K.S. were not yelling, but their voices were raised, and they were arguing about K.S. waking up appellant. (Tr. Vol. 1 at 63-64.) D.R. then heard screaming and K.S. tell appellant that he would be right back.   K.S. then went upstairs, probably to put on shoes, in preparation for fighting. (Tr. Vol. 1 at 64-66.)   K.S. then returned to the main floor.

{¶ 5}   At this point, D.R. had walked up the stairs from the basement and was in the kitchen when he heard three gunshots. (Tr. Vol. 1 at 66.)   D.R. went to the living room and saw K.S., who had already been shot three times, next to appellant who was leaning back against the couch holding a gun to the side of K.S.'s right cheek.   (Tr. Vol. 1 at 68-70 & 81-82.) D.R. saw a muzzle flash as appellant shot K.S. in the face, who then fell with his head landing on an ottoman. (Tr. Vol. 1 at 71, 82 & 94.) K.S. told D.R. that he needed help and wanted D.R. to call an ambulance.   Appellant told D.R. not to call the ambulance. (Tr. Vol. 1 at 72.)

{¶ 6}   D.R. saw his younger sister, Z.G., coming down the steps from her upstairs bedroom and told her to go back upstairs. D.R. then left the house and called 911 on his cell phone. (Tr. Vol. 1 at 73-74 & 86.) D.R. told the dispatcher that K.S. had been shot. He then called his mother and went back to the house, where police had already arrived and were talking to Z.G. Appellant had left the house by this time. (Tr. Vol. 1 at 130.) When officers spoke to D.R. he told them that his uncle, appellant, had shot K.S. (Tr. Vol. 1 at 75 & 127-8.)  He also identified appellant as the shooter in the courtroom.  (Tr. Vol. 1 at 92.)

{¶ 7}   Z.G. testified that she heard appellant and K.S. arguing before she went to bed and, as a result, she went upstairs and shut her bedroom door. (Tr. Vol. 1 at 115.) While she could not pinpoint an exact time, she did testify that she fell asleep after dinner when it was night time.  Quite a few hours later, she was awakened by a gunshot. (Tr. Vol. 1 at 107, 115 & 118.) She was on her way downstairs when D.R. told her to go back upstairs. Z.G. initially went back to her bedroom, but then went and sat on the steps. (Tr Vol. 1 at 108.)  While sitting on the steps, she saw appellant walk by her wearing a white t-shirt that resembled a tank top go into the bathroom and change his shirt. (Tr. Vol. 1 at 108-10.)  Appellant then left the apartment and did not return. (Tr. Vol. 1 at 113.)

{¶ 8}   S.G. testified that on May 7, 2015, she found a white tank top with blood on it in the upstairs bathroom, and her sister found a coffee can containing unused bullets in the living room, where appellant slept. (Tr. Vol. 1 at 149-52.)  S.G. testified that she was not aware of, nor did she allow, any guns in her apartment. (Tr. Vol. 1 at 156.)

{¶ 9}   The tank top was analyzed by the Columbus Police Laboratory and the DNA on the blood swabs were consistent with K.S.'s DNA, i.e., the blood on the t-shirt was from K.S. (Mar. 16, 2016 Tr. Vol. 2 at 260 & 262.) A firearm examiner from the Columbus Police Department testified that a bullet recovered from K.S.'s body and one of the unused bullets from the coffee can were structurally indistinguishable. (Tr. Vol. 2 at 302-08.)

{¶ 10} Dr. John Somerset of the Franklin County Coroner's Office noted that K.S. was shot four times.  K.S. suffered two gunshot wounds to his head, one to his face, and a fatal wound that entered his shoulder, traveled into his chest, and severed a major artery. (Tr. Vol. 2 at 220-21 & 224-33.)  The wounds to the head and face were not "immediately fatal." (Tr. Vol. 2 at 221.)  Dr. Somerset noted that the last shot, i.e., the one to K.S.'s face that was witnessed by D.R., showed evidence of close-range firing. He opined that the shot was fired from "definitely less than a foot and probably less than six inches" away from K.S. (Tr. Vol. 2 at 230-31.)

{¶ 11} Appellant was later arrested and agreed to give a statement. He denied any involvement in the shooting. Appellant claimed that he left the apartment around 9:30 p.m. and went to a neighborhood bar. (Tr. Vol. 2 at 352-53 & 366.) He stated that he remained at that bar until last call at approximately 2:10 a.m., then left the bar and got a

ride to his girlfriend's house, arriving between 3:00 and 3:30 a.m. (Tr. Vol. 2 at 353-57.) He stayed there for the remainder of the night.

{¶ 12} However, in addition to the positive identification of him by his nephew and niece and the presence of K.S.'s blood on his t-shirt, cell phone records from appellant's phone revealed that calls from his cell phone were placed to his girlfriend's phone and his brother's phone within minutes of the homicide. (Tr. Vol. 2 at 405-07.) Cell phone tower data showed that, at the date and time of the homicide, appellant's phone was in the general area of the homicide and was not, at any point, in the area of his girlfriend's apartment. (Tr. Vol. 2 at 413-18.) After that, calls were on towers moving south. Appellant's girlfriend lived to the northwest of the incident site. (Tr. Vol. 2 at 399.)

{¶ 13} At trial, appellant's counsel orally moved the court for acquittal pursuant to Crim.R. 29, specifically addressing the prior calculation and design element of the aggravated murder count. (Tr. Vol. 2 at 435-38.) The court overruled the motion.

{¶ 14} On March 18, 2016, after a five-day trial, the jury found appellant guilty of aggravated murder with specifications, and murder with specifications. The court returned a verdict finding appellant guilty of having a weapon while under disability. (Jgmt. Entry at 1.)

{¶ 15} At a separate sentencing hearing held on April 21, 2016, the aggravated murder and murder counts merged, and the state elected to proceed with sentencing on the aggravated murder count. The court sentenced appellant to life without possibility of parole for aggravated murder, 36 months on the weapon while under disability charge, 3 years on the gun specification, and 10 years on the RVO specification. (Jgmt. Entry at 2.)

## II. ASSIGNMENT OF ERROR

{¶ 16} Appellant appeals and assigns the following errors:

> [I.] THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS.
>
> [II.] THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29.
>
> [III.] THE JURY'S VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. DISCUSSION

{¶ 17} At first we note that appellant's assignments of error do not attack the validity of his convictions for murder with gun and RVO specifications, and having a weapon while under disability. Instead, all of appellant's assignments of error argue that his conviction for aggravated murder should be reversed because the state did not prove prior calculation and design as required by R.C. 2903.01. All of appellant's assignments of error are interrelated. As such, we will first address assignment of error three, the manifest weight of the evidence argument, as resolution of this assignment of error is dispositive of the appeal.

{¶ 18} Appellant argues the guilty verdict for aggravated murder was against the manifest weight of the evidence. Appellant argues that the state presented no evidence indicative of prior calculation and design, and thus no rational jury could have found that appellant was acting with prior calculation and design, therefore, it was incorrect for the jury to convict on the aggravated murder count.

{¶ 19} This court in *State v. Baatin*, 10th Dist. No. 11AP-286, 2011-Ohio-6294, ¶ 8-11, stated the applicable law:

> Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11 * * *. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *Id.*
>
> The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
>
> When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at

387. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*; *State v. Strider-Williams*, 10th Dist. No. 10AP-334, 2010-Ohio-6179, ¶ 12.

In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting our review, we are guided by the presumption that the jury * * * " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.* * * * Accordingly, we afford great deference to the jury's determination of witness credibility.

{¶ 20} The aggravated murder statute, R.C. 2903.01(A), states that "[n]o person shall purposely, and with prior calculation and design, cause the death of another." Since the enactment of R.C. 2903.01 in 1974, the Supreme Court of Ohio has repeatedly emphasized that there is no "bright-line test that emphatically distinguishes between the presence or absence of 'prior calculation and design.' Instead, each case turns on the particular facts and evidence presented at trial." *State v. Taylor*, 78 Ohio St.3d 15, 20 (1997); *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, ¶ 61; *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 148.

{¶ 21} However, courts have looked at numerous factors in analyzing prior calculation and design issues. In *Taylor* at 19, the court looked at three factors: (1) did the accused and victim know each other, and if so, was that relationship strained; (2) did the accused give thought or preparation to choosing the murder weapon or murder site; and (3) was the act drawn out or "an almost instantaneous eruption of events." *Id.*

{¶ 22} Additionally, in *State v. Cotton,* 56 Ohio St.2d 8 (1978), and in *State v. Robbins*, 58 Ohio St.2d 74 (1978), the Supreme Court set forth the following syllabus rule:

Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified.

In *Robbins*, the Supreme Court found sufficient evidence of prior calculation and design when the defendant assaulted the victim in an apartment hallway, went into his own apartment, retrieved a sword, and then "instants later" stabbed the victim fatally. *Id.* at 79. *See State v. Bailey*, 90 Ohio App.3d 58, 73 (11th Dist.1992) (prolonged thought process not required; under *Robbins*, evidence sufficient when defendant had only "instants" to design death). *See also State v. Small*, 10th Dist. No. 06AP-1110, 2007-Ohio-6771, ¶ 11.

{¶ 23} While "prior calculation and design" requires something more than instantaneous deliberation, it does not require a drawn-out thought process. *See Cotton* at 11. No particular time frame is necessary. *Taylor* at 22. A finding of prior calculation and design has been upheld even though the defendant's actions took only "a minute or two." *State v. D'Ambrosio*, 67 Ohio St.3d 185, 196 (1993). "[P]rior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes," *State v. Coley*, 93 Ohio St.3d 253, 264 (2001), as long as the killer's actions "went beyond a momentary impulse and show that he was determined to complete a specific course of action," *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶ 46; *Small* at ¶ 12.

{¶ 24} Firing multiple gunshots at close range at the victim's head demonstrates that defendant "engaged in more than a mere 'instantaneous deliberation' " with respect to the victim's death. *State v. Palmer*, 80 Ohio St.3d 543, 569 (1997); *State v. Carson*, 10th Dist. No. 05AP-13, 2006-Ohio-2440, ¶ 24-27 (sufficient evidence of prior calculation and design where victim and defendant knew each other, argued, before defendant shot victim first in the head then three or four more times). Additionally, execution-style slayings bespeak calculation and design. *State v. Campbell*, 90 Ohio St.3d 320, 330 (2000); *State v. Trewartha*, 165 Ohio App.3d 91, 2005-Ohio-5697, ¶ 33 (10th Dist.). In *State v. Goodwin*, 84 Ohio St.3d 331, 344 (1999), the Supreme Court found sufficient evidence of prior calculation and design where the defendant placed his gun to the forehead of the unresisting victim, and pulled the trigger, killing the victim instantly. *See Small* at ¶ 16.

{¶ 25} The Supreme Court has recently addressed the issues related to the prior calculation and design requirements in the aggravated murder statute in *State v. Walker*, __Ohio St.__, 2016-Ohio-8295. In *Walker*, the Supreme Court stated that:

> We accepted this discretionary appeal by the state of Ohio from a judgment of the Eighth District Court of Appeals that reversed a conviction of aggravated murder because it was not supported by sufficient evidence of prior calculation and design. During a bar fight, Dajhon Walker knowingly killed Antwon Shannon, and for that act Walker was properly convicted of felony murder under R.C. 2903.02(B). But the evidence did not show that this killing was done with prior calculation and design as required to sustain a conviction for aggravated murder. The elements of purpose and of prior calculation and design are distinct, and the state must prove both to support a conviction of aggravated murder under R.C. 2903.01.
>
> We therefore affirm the judgment of the court of appeals.

*Id.* at ¶ 1-2.

{¶ 26} In *Walker*, the facts show that two groups of people were fighting in a bar. Walker joined in, hitting Shannon (the victim) and throwing a bottle at him. Walker then hopped backwards, grabbing at his waistband, hunched over, and moved to the side. Shannon moved away from the fight. Walker went out of view to the corner of the room behind a pillar. The video footage shows a gunshot flash a few seconds later with everyone in the club scattering. Walker appeared from the other side of the pillar fumbling with his waistband, and he and another person hurried out of the area together. Shannon was shot in the back from a distance of one-to-two feet by a .45-caliber bullet, which passed through his chest. Shannon died soon after. *Walker* at ¶ 5-7.

{¶ 27} At trial, the jury found Walker guilty of aggravated murder, felony murder, and four counts of felonious assault, and the trial court found him guilty of having a weapon while under a disability. Walker appealed to the Eighth District Court of Appeals, arguing that his aggravated murder conviction was not supported by sufficient evidence. The appellate court agreed and concluded that the state had failed to establish that Walker acted with prior calculation and design. *State v. Walker*, 8th Dist. No. 99998, 2014-Ohio-1827, ¶ 21.

{¶ 28} The Supreme Court examined "the facts in Walker's case in light of the questions asked in *Taylor*," and found that:

> [I]t appears from the evidence that Walker and Shannon did not know each other, that the killing resulted from a spontaneous eruption of events, and that Walker had not given thought to choosing the murder site. Additionally, Walker did not give thought or preparation to choosing the murder weapon: from his approach to the dance floor at approximately 2:02 a.m. until the fight began at 2:11 a.m., Walker did not move from the area, meaning that the weapon was already on his person before he was even aware of [the animosity between the groups].

*Walker* at ¶ 23.

{¶ 29} The Supreme Court then reasoned that:

> [T]he videos show an assault that quickly escalated into chaos. For approximately 20 seconds of that chaos, Walker was obscured from the security cameras by a pillar. A jury could reasonably infer that during that time, Walker decided to kill Shannon by shooting him, but it could not reasonably infer that he planned the murder beforehand with prior calculation and design. The element of prior calculation and design requires evidence that supports more than the inference of purpose. Inferring prior calculation and design from an inference of purpose is mere speculation. Accordingly, Walker's conviction for aggravated murder was not supported by sufficient evidence.

*Id.* at ¶ 26.

{¶ 30} In the present case, appellant argues, like the appellant in *Walker*, that the element of prior calculation and design was not proven. Appellant argues that he did not give any thought or preparation to choosing the site. Along those same lines, appellant states that this shooting can only be seen as an instantaneous eruption. Therefore, because none of the factors required for prior calculation and design are present, no rational trier of fact could have found that all elements of aggravated murder were proven. As such, appellant alleges that his conviction on the aggravated murder count was based upon insufficient evidence and should be reversed. We disagree.

{¶ 31} Our review of the entire record shows that a jury could reasonably find that there was "the presence of sufficient time and opportunity for the planning of an act of

homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill." *Cotton* and *Robbins* at syllabus. We note that the elements of an offense may be established by direct evidence, circumstantial evidence, or both. *See State v. Durr*, 58 Ohio St.3d 86, 92 (1991). Circumstantial and direct evidence are of equal probative value. *See State v. Jenks*, 61 Ohio St.3d 259, 272 (1991).  In addition, as the court stated in *State v. Sanders*, 6th Dist. No. L-96-379 (Feb. 13, 1998):

> It is permissible for a jury to draw inferences from the facts presented to them. *State v. Palmer* (1997), 80 Ohio St. 3d 543, 561, 687 N.E.2d 685, citing *Hurt v. Charles J. Rogers Transportation Co.* (1955), 164 Ohio St. 329, 130 N.E.2d 820. The weight given to an inference is a question for the trier of fact and will not be disturbed unless it is such that reasonable minds could not reach such a conclusion. *Id.* at paragraph four of the syllabus.

*Id.* at 7.

{¶ 32} In reviewing the factors stated in *Taylor*, unlike *Walker*, it is undisputed that appellant and K.S. knew each other and had been arguing earlier in the evening to the extent that Z.G. shut her bedroom door to avoid hearing them, and they continued arguing during the middle of the night just prior to the shooting. Shortly before the shooting, the victim left the living room area, went upstairs to the second floor of the home, then returned to the living room area, where a jury could infer that the appellant waited for him and immediately shot him multiple times and killed him.  Notably, unlike *Walker*, appellant had time to arm himself with a loaded firearm. Also, unlike *Walker* wherein there was only one gun shot, the jury could determine that appellant made a calculated decision to kill K.S., and after shooting him three times, put a gun to his head and shot him execution style in the face. *See Palmer* at 569; *Cotton* at 11; *Carson* at ¶ 24-27.

{¶ 33} Certainly a jury could reasonably conclude based on the evidence, i.e., two gunshot wounds to K.S.'s head, a close-range gun shot wound to his face, and a gunshot wound to his body, that appellant made a calculated decision to kill the victim, and that appellant then followed through on his calculated decision. Our review shows that the jury did not clearly lose its way when it found the state's evidence persuasive and did not

create a manifest miscarriage of justice. The evidence does not weigh heavily against conviction and appellant presents no persuasive reason for this court to reject the jury's determination. Appellant's third assignment of error challenging the manifest weight of the evidence lacks merit and is overruled.

{¶ 34} A finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11. Therefore, appellant's first assignment of error challenging the sufficiency of the evidence for the aggravated murder conviction is overruled.

{¶ 35} The same sufficiency standard governs the consideration of motions for acquittal under Crim.R. 29. *State v. Gripper*, 10th Dist. No. 12AP-396, 2013-Ohio-2740, ¶ 24, fn. 1.

{¶ 36} "Because analysis of the evidence for purposes of a Crim.R. 29(A) motion looks at the sufficiency of the evidence, a Crim.R. 29(A) motion and a review of the sufficiency of the evidence are subject to the same analysis." *State v. Clellan*, 10th Dist. No. 09AP-1043, 2010-Ohio-3841, ¶ 7, citing *State v. Tenace,* 109 Ohio St.3d 255, 2006-Ohio-2417. Such motions are directed to the issue of whether "the evidence is insufficient to sustain a conviction." Crim.R. 29(A). As such, there was sufficient evidence to support the conviction for aggravated murder and to overrule appellant's Crim.R. 29 motion for acquittal. Therefore, appellant's second assignment of error is overruled.

## IV. DISPOSITION

{¶ 37} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK, P.J. and BROWN, J., concur.

———————————————