[Cite as *State v. Truss*, 2019-Ohio-3579.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

     Plaintiff-Appellee,                         :

                                                     No. 18AP-147

v.                                                     :          (C.P.C. No. 16CR-6513)

Deanthoni S. Truss,                                    :          (REGULAR CALENDAR)

     Defendant-Appellant.                      :

---

D E C I S I O N

Rendered on September 5, 2019

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Seth L. Gilbert*.

**On brief:** *Yeura Venters*, Public Defender, and *Robert D. Essex*, for appellant. **Argued:** *Robert D. Essex*.

---

APPEAL from the Franklin County Court of Common Pleas

KLATT, P.J.

{¶ 1}  Defendant-appellant, Deanthoni S. Truss, has filed a delayed appeal from the judgment of the Franklin County Court of Common Pleas sentencing him to 40 years to life imprisonment following the jury's guilty verdict on charges of aggravated murder, murder, attempted murder, felonious assault, and attendant firearm specifications. For the following reasons, we affirm that judgment.

{¶ 2}  Our recitation of the facts in this case derives in large part from a surveillance video obtained by the Columbus Police Department from the Quick Stop convenience store located at 2276 East Fifth Avenue.  Just before noon on June 8, 2016, Tommie Brown drove into the parking lot of the Quick Stop, exited his vehicle, and shook hands with Kris Pace,

who was standing outside the store.  Tommie went into the store, purchased an item, exited the store, and resumed his conversation with Kris.

{¶ 3}   A car driven by William Brown (no relation to Tommie) pulled into the parking spot next to Tommie's vehicle.  Moments later, a car driven by Treyon Lee parked next to William; appellant was seated in the front passenger seat of Lee's car.  Lee did not pull his vehicle all the way into the parking space. As William exited his car, he spoke to appellant through the open car window.  William then entered the store and walked to the counter.   Almost immediately, William exited the store and engaged in another conversation with appellant, who was still seated in Lee's car.  Following this conversation, William re-entered the store; Kris followed him inside. As William stood at the counter, Kris punched him in the face, knocking him to the floor.  Kris continued to strike William as he lay on the floor. At trial, Kris testified that he attacked William because William had pulled a gun on him a few days earlier.

{¶ 4}   In the meantime, Tommie walked toward the entrance of the store. At the same time, appellant exited Lee's car, shook hands with Tommie, and scanned the area.  He held the door open for Tommie, scanned the area again, pulled a gun from his jacket pocket and followed Tommie into the store.  Tommie stood inside, watching the fight between William and Kris. Immediately after entering the store, appellant turned toward Tommie and fired two shots at him from close range.    One bullet struck Tommie in the abdomen; the other struck him in the chest.  Appellant then approached Kris and William and fired five shots at them.  He immediately ran out the front door and dove headfirst into Lee's car through the open passenger window. Lee was already backing out of the parking space as appellant exited the store.  Appellant and Lee fled the scene.

{¶ 5}   In the aftermath of the shootings, the store cashier called 911 and attempted to assist Kris, who had been shot several times.  William, who had been shot in the shoulder, ran out of the store and drove away.  Tommie collapsed and died inside the front entrance. Kris was rendered a quadriplegic as a result of the shooting.

{¶ 6}   During their investigation, the police recovered, among other evidence, a semiautomatic handgun from the floor near Tommie's head.  The police also obtained the surveillance video from the store. After interviewing witnesses and reviewing the

surveillance video, the police developed appellant as a suspect in the shootings. A warrant for his arrest was issued on June 22, 2016.

{¶ 7}  On November 17, 2016, the Southern Ohio Fugitive Apprehension Team ("SOFAST"), a task force comprised of several federal and state law enforcement officers, tracked appellant and two women to a hotel room in northern Franklin County. Several SOFAST officers, all dressed in tactical gear, assembled outside the hotel room to execute the arrest warrant. Pursuant to SOFAST protocol, one of the officers knocked loudly on the door of the hotel room several times, each time announcing himself as a police officer with a warrant for appellant's arrest. When appellant did not respond, the officer warned appellant that the SOFAST team would force the door open if appellant did not voluntarily open the door. Receiving no response, the officers breached the door and removed the two women from the room. Appellant fired multiple shots at the officers, and they returned fire.

{¶ 8}  Following the shootout, appellant was taken into custody and interviewed by a Columbus police detective. During that interview, the detective described in detail the events depicted on the surveillance video. Appellant admitted that he knew Tommie, Kris, and William prior to the incident on June 8, 2016. However, he did not know that William was going to be at the Quick Stop that day or what precipitated the fight between William and Kris. He further averred that he had not seen Tommie for some time and thought they were "cool" with each other. (Nov. 17, 2016 interview, State's Ex. R.) He admitted that he shot Tommie, William, and Kris, but explained that he thought there was a robbery in progress because when he opened the door for Tommie, Tommie told him he would kill him if he "jump[ed] in." *Id.*  Appellant also stated that Tommie was holding a firearm at his side when he entered the store. Appellant further asserted that at the time of the shootout on November 17, 2016, he was unaware that a warrant had been issued for his arrest and did not realize that the persons outside his hotel room were police officers.

{¶ 9}  On November 22, 2016, appellant was indicted on seven counts arising from the June 8, 2016 shootings: aggravated murder, murder, and felony murder as to Tommie Brown; felonious assault and attempted murder as to Kris Pace; felonious assault and attempted murder as to William Brown; and three-year firearm specifications attached to those seven offenses. In the same indictment, appellant was also charged with three counts

of felonious assault arising from the November 17, 2016 shootout at the hotel, along with attached three-year and seven-year firearm specifications.

{¶ 10} The jury convicted appellant of all offenses and specifications charged in the indictment. Following a sentencing hearing, the trial court sentenced appellant to a prison term of 40 years to life.

{¶ 11} Appellant advances two assignments of error for this court's review:

> [I]. Appellant was denied his due process right to a fair trial when the court failed to grant his motion for relief from prejudicial joinder.

> [II]. Appellant's aggravated murder conviction was not supported by sufficient evidence and was against the manifest weight of the evidence as the state failed to prove the element of "prior calculation and design."

{¶ 12} In his first assignment of error, appellant contends that the trial court abused its discretion in denying his Crim.R. 14 motion for relief from joinder of the June 8 and November 17, 2016 offenses in the same indictment. We disagree.

{¶ 13} On August 15, 2017, appellant filed a motion to sever the charges arising from the June 8, 2016 shootings at the Quick Stop from the charges arising from the November 17, 2016 shootout with the police. Appellant contended that trying the offenses together before the same jury would irreparably impair his right to a fair trial. More specifically, appellant maintained that because the jury would be confronted with evidence pertaining to both incidents simultaneously, the jury likely would consider the cumulative effect of the evidence to convict him on all charges stemming from both incidents. Appellee, state of Ohio, filed a memorandum contra on August 31, 2017.

{¶ 14} The trial court held a hearing on appellant's motion on October 4, 2017. Following argument, the trial court orally denied appellant's motion. The trial court filed a written decision and entry to that effect on October 5, 2017. Appellant renewed his objection to joinder of the charged offenses at the close of the state's presentation of evidence at trial.

{¶ 15} Crim.R. 8(A) sets forth the circumstances under which multiple offenses may be joined in a single indictment. Pursuant to that rule, two or more offenses may be charged in the same indictment if they are "of the same or similar character, or are based on the

same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 8(A).

{¶ 16} " 'The law favors joining multiple criminal offenses in a single trial. ' " *State v. Gordon,* 152 Ohio St.3d 528, 2018-Ohio-259, ¶ 18, quoting *State v. Franklin*, 62 Ohio St.3d 118, 122 (1991). This is because joinder " ' "conserves judicial and prosecutorial time, lessens the not inconsiderable expense of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." ' " *State v. Walters,* 10th Dist. No. 06AP-693, 2007-Ohio-5554, ¶ 21, quoting *State v. Daniels*, 92 Ohio App.3d 473, 484 (1st Dist.1993), quoting *State v. Thomas,* 61 Ohio St.2d 223, 225 (1980). Notwithstanding the policy favoring joinder, an accused may move pursuant to Crim.R. 14 to sever counts of an indictment on the grounds that he or she will be prejudiced by the joinder of multiple offenses. *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 49. To obtain severance pursuant to Crim.R. 14, the accused bears "the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial." *State v. Torres,* 66 Ohio St.2d 340, 343 (1981), syllabus.

{¶ 17} The state may negate an accused's claims of prejudicial joinder by demonstrating either of the following: (1) that the evidence to be introduced relative to one offense would be admissible in the trial on the other, severed offense, pursuant to Evid.R. 404(B) (the "other acts" test); or (2) that, regardless of the admissibility of such evidence, the evidence relating to each charge is simple and direct (the "joinder test"). *Franklin* at 122. Because the two tests are disjunctive, the satisfaction of one negates an accused's claim of prejudice without consideration of the other. *State v. Gravely,* 188 Ohio App.3d 825, 2010-Ohio-3379, ¶ 38 (10th Dist.), citing *State v. Cameron*, 10th Dist. No. 09AP-56, 2009-Ohio-6479, ¶ 35.

{¶ 18} Trial courts have considerable latitude in determining whether severance is warranted, and an appellate court will not reverse a trial court's decision to deny severance absent an abuse of discretion. *State v. Sullivan,* 10th Dist. No. 10AP-997, 2011-Ohio 6384,

¶ 24, citing *State v. Wilkerson,* 10th Dist. No. 01AP-1127, 2002-Ohio-5416, ¶ 41, citing *State v. Johnson,* 10th Dist. No. 96APA06-751 (Mar. 4, 1997).  A trial court abuses its discretion when its ruling is "unreasonable, arbitrary, or unconscionable."  *Id.,* quoting *State v. Vasquez,* 10th Dist. No. 05AP-705, 2006-Ohio-4074, ¶ 6, quoting *State v. Adams,* 62 Ohio St.2d 151, 157 (1980).

{¶ 19} As noted above, the tests for refuting an accused's claim of prejudice are disjunctive.  Thus, "[i]f the state can meet the joinder test, it need not meet the stricter 'other acts' test."  *State v. Johnson,* 88 Ohio St.3d 95, 109 (2000).  Under the joinder test, severance is unnecessary if "evidence of each crime joined at trial is simple and direct." *State v. Lott,* 51 Ohio St.3d 160, 163 (1990), citing *State v. Roberts,* 62 Ohio St.2d 170, 175 (1980).  "Evidence meets the simple-and-direct standard if it is straightforward and uncomplicated enough that the jury can segregate the proof required for each offense." *State v. Parham,* 10th Dist. No. 16AP-826, 2019-Ohio-358, ¶ 27, citing *State v. Clinton,* 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 52; *Sullivan* at ¶ 29.

{¶ 20} The evidence presented in this case satisfied the simple-and-direct standard. Neither the Quick Stop shootings on June 8, 2016 nor the hotel shootout with police on November 17, 2016 involved factual scenarios so complex that the jury would have difficulty separating the evidence presented as to each event.  In addition, the state "presented the evidence in an orderly manner."  *State v. Williams,* 10th Dist. No. 02AP-730, 2003-Ohio-5204, ¶ 31.  The first portion of the state's case involved the Quick Stop shootings, while the second portion was devoted mainly to the police shootout at the hotel. Other than law enforcement witnesses who collected or analyzed evidence from both scenes, the state's evidentiary presentations did not overlap in any meaningful way.  As to the shootings at the Quick Stop on June 8, 2016, the jury was presented with the store surveillance video as well as witness and victim testimony establishing that appellant shot Tommie, William, and Kris. The evidence presented as to the shootout with police on November 17, 2016 involved different victims, different witnesses, and a completely separate and distinct fact pattern.

{¶ 21} Moreover, the trial court limited potential prejudice by instructing the jury to consider each count of the indictment separately.  Indeed, the trial court informed the jury that "[t]he charges set forth in each count in the indictment constitute a separate and distinct matter" and that it "must consider each count and the evidence applicable to each

count separately and you must state your finding as to each count uninfluenced by your verdicts as to any other count." (Tr. at 742.)

{¶ 22} We presume the jury followed the trial court's limiting instruction. *Sullivan*, 1oth Dist. No. 10AP-997, 2011-Ohio-6384, ¶ 31, citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 86. The trial court's admonition in this regard makes the possibility of jury confusion "extremely remote." *State v. Bass*, 10th Dist. No. 12AP-622, 2013-Ohio-4503, ¶ 23. There is no indication in the record that the jury was unable or unwilling to segregate the proof as to the charges arising from the separate incidents.

{¶ 23} Finally, as noted by the state, appellant does not contend that he would have defended either case differently had the charges not been joined. *Johnson*, 88 Ohio St.3d at 110, citing *Franklin*, 62 Ohio St.3d at 123.

{¶ 24} In short, applying the "joinder test," we find that the evidence relative to the offenses charged in the single indictment was both simple and direct. Accordingly, appellant's claim of prejudice was negated by the state under the "joinder test." The "other acts" test also may be satisfied here, but we need not reach that question.

{¶ 25} For the foregoing reasons, we find no abuse of discretion in the trial court's denial of appellant's motion for severance. Accordingly, appellant's first assignment of error is overruled.

{¶ 26} In his second assignment of error, appellant contends that his conviction for aggravated murder is not supported by sufficient evidence and is against the manifest weight of the evidence. We disagree.

{¶ 27} Sufficiency of the evidence is the legal standard applied to determine whether the state's evidence is legally adequate to support the verdict. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support the verdict is a question of law, not fact. *Id.* In determining whether the evidence is legally sufficient to support the verdict as a matter of law, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson,* 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that

reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh,* 90 Ohio St.3d 460, 484 (2001), citing *Jenks* at 273.

{¶ 28} In a sufficiency of the evidence inquiry, appellate courts do not assess whether the state's evidence is to be believed, but whether, if believed, the evidence supports the conviction. *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime").

{¶ 29} When presented with a manifest-weight challenge, an appellate court may not merely substitute its view for that of the trier of fact but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). An appellate court should reverse a conviction as being against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 30} In a manifest weight of the evidence review, an appellate court may consider the credibility of the witnesses. *State v. Cattledge,* 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting such review, "we are guided by the presumption that the jury * * * 'is best able to view the witnesses and observe their demeanor, gestures and voice inflictions, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984). "Accordingly, we afford great deference to the jury's determination of witness credibility." *State v. Albert,* 10th Dist. No. 14AP-30, 2015-Ohio-249, ¶ 14, citing *State v. Redman,* 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26.

{¶ 31} As noted above, appellant challenges only his conviction for aggravated murder. Pursuant to the aggravated murder statute, the state was required to prove beyond a reasonable doubt that appellant "purposely, and with prior calculation and design,

cause[d] the death" of Tommie Brown. R.C. 2903.01(A).   Appellant does not dispute that the state's evidence established that he purposely caused Tommie's death.   Indeed, the surveillance video depicts appellant shooting Tommie twice at close range.   Rather, appellant contends that the state failed to prove that he do so "with prior calculation and design."

{¶ 32} "Evidence of purpose * * * does not automatically mean that the element of prior calculation and design also exists." *State v. Walker,* 150 Ohio St.3d 409, 2016-Ohio-8295, ¶ 17, citing *State v. Campbell,* 90 Ohio St.3d 320, 341 (2000).   "The phrase 'prior calculation and design' by its own terms suggests advance reasoning to formulate the purpose to kill. Evidence of an act committed on the spur of the moment or after momentary consideration is not evidence of a premeditated decision or a studied consideration of the method and the means to cause a death." *Id.* at ¶ 18.

{¶ 33} Since the enactment of R.C. 2903.01 in 1974, the Supreme Court of Ohio has continually emphasized that "there is no 'bright-line test that emphatically distinguishes between the presence or absence of "prior calculation and design."   Instead, each case turns on the particular facts and evidence presented at trial.' "   *Walker* at ¶ 19, quoting *State v. Taylor,* 78 Ohio St.3d 15, 20 (1997).

{¶ 34} In *State v. Franklin,* 97 Ohio St.3d 1, 2002-Ohio-5304, the Supreme Court of Ohio reiterated three "pertinent" considerations in determining the existence of prior calculation and design: " '(1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or "an almost instantaneous eruption of events?" ' "   *Id.* at ¶ 56, quoting *Taylor* at 19, citing *State v. Jenkins,* 48 Ohio App.2d 99, 102 (8th Dist.1976).

{¶ 35} Appellant relies heavily on these three factors in arguing that he did not act with prior calculation and design.   Specifically, appellant contends that although he and Tommie knew each other prior to the shooting, no evidence established that there was "bad blood" between them. (Appellant's brief at 27.) In support of this assertion, appellant points out that he and Tommie shook hands before entering the Quick Stop.   Appellant further contends that no evidence established that appellant chose the murder site or brought a gun specifically in anticipation of shooting Tommie; rather, appellant argues, "all the

evidence suggests that this was a chance encounter." *Id.* Finally, appellant maintains that no evidence established that the act was drawn out; rather, it was "much more of an instantaneous eruption of events." *Id.* at 28. In support of this argument, appellant notes that less than ten seconds elapsed from the time he opened the door for Tommie and ran out of the store after the shootings.

{¶ 36} In his dissent in *Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, Justice O'Donnell noted that factors other than those set forth in the *Taylor/Franklin* paradigm may be relevant in a prior-calculation-and-design analysis. "However 'pertinent' [the *Taylor/Franklin* considerations] may be, we have never held that these are the *exclusive* factors to be applied in determining whether the accused acted with prior calculation and design." (Emphasis sic.) *Walker* at ¶ 40 (J. O'Donnell, dissenting). To that end, Justice O'Donnell noted that the court had found prior calculation and design to be present " 'even when the killer quickly conceived and executed the plan to kill within a few minutes,' *State v. Coley,* 93 Ohio St.3d 253, 264 (2001) * * *, as long as the killer's actions 'went beyond a momentary impulse and show that he was determined to complete a specific course of action.' *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, * * * ¶ 46." *Id.* at ¶ 41. This court considered and applied the *Coley/Conway* factors in *State v. Gamble,* 10th Dist. No. 16AP-397, 2017-Ohio-1527, ¶ 23.

{¶ 37} The *Gamble* court also noted the syllabus rule set forth in *State v. Cotton,* 56 Ohio St.2d 8 (1978), and *State v. Robbins,* 58 Ohio St.2d 74 (1978): " '[w]here evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified.' " *Gamble* at ¶ 22. Of particular relevance here, we noted in *Gamble* that the *Robbins* court found evidence of prior calculation and design sufficient where the defendant had only "instants" to design death. *Id.*

{¶ 38} With these guidelines in mind, and viewing the evidence in a light most favorable to the prosecution, it is manifest that the state presented sufficient evidence to prove prior calculation and design. The surveillance video showed appellant holding the door open for Tommie to enter the Quick Stop while simultaneously removing his gun from

his jacket pocket and scanning the area, presumably to assess potential witnesses. Appellant then followed Tommie into the store and immediately fired two shots at him, with no intervening interaction between the two. From this evidence, the jury reasonably could infer that appellant's actions in holding the door for Tommie and allowing him to precede him into the store indicated that appellant wanted Tommie in front of him, ostensibly so he could ambush him once they were both inside the store. The jury also reasonably could infer that appellant's action in extracting his gun from his jacket prior to entering the store established a pre-conceived plan to shoot Tommie.

{¶ 39} The surveillance video further showed that after shooting Tommie, appellant immediately fires several shots at William and Kris. The jury reasonably could infer that this action "went beyond a momentary impulse and show[ed] that he was determined to complete a specific course of action." *Gamble* at ¶ 23. Immediately after the shootings, appellant fled the store and jumped headfirst into the vehicle that had not fully pulled into the parking space upon arrival and was backing out of the space as appellant ran out of the store. The jury reasonably could infer that these actions evidenced a planned getaway.

{¶ 40} For the foregoing reasons, we find the state presented sufficient evidence to prove the element of prior calculation and design and support the conviction for aggravated murder pursuant to R.C. 2903.01(A).

{¶ 41} Appellant also contends that his aggravated murder conviction was against the manifest weight of the evidence. Appellant essentially relies on the same arguments advanced in support of his sufficiency claim, that is, that the handshake between he and Tommie prior to the shooting demonstrated that there was no "bad blood" between them; that he had no reason to anticipate that he was going to encounter Tommie at the store that day, as he had not seen him recently; and that the shooting resulted from a spontaneous eruption of events, that is, his belief that there was a robbery in progress, rather than a planned encounter. Appellant's arguments in this regard are essentially based upon statements he made during his interview with the police. However, the jury viewed both the DVD of the interview and the Quick Stop surveillance video and presumably utilized that evidence in assessing appellant's credibility. As noted above, as an appellate court, we must afford great deference to the jury's credibility determinations.

{¶ 42} Upon review of the entire record, we conclude that the jury did not lose its way and create such a manifest miscarriage of justice that appellant's conviction for aggravated murder must be reversed. The evidence at trial does not weigh heavily against conviction and appellant presents no persuasive reason for this court to reject the jury's determination. Accordingly, appellant's manifest weight challenge lacks merit.

{¶ 43} For the foregoing reasons, we find that appellant's conviction for aggravated murder was supported by sufficient evidence and was not against the manifest weight of the evidence. Accordingly, we overrule appellant's second assignment of error.

{¶ 44} Having overruled appellant's first and second assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and NELSON, JJ., concur.

––––––––––––––