[Cite as *State v. Gross*, 2017-Ohio-8493.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27322 |
| | : | |
| v. | : | Trial Court Case No. 16-CRB-3490 |
| | : | |
| MARK GROSS | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of November, 2017.

. . . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101, City of Dayton Prosecutor's Office,   335 West Third Street, Room 372, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, P.J.

{¶ 1} Mark Gross appeals his convictions for loitering to engage in solicitation and soliciting. We affirm the loitering conviction but reverse the soliciting conviction.

### I. Facts and Proceedings

{¶ 2} One late afternoon in May 2016, Dayton police detective Mistan Bailey was working undercover as a prostitute in the 500 block of Xenia Avenue. The area was the target of a prostitution decoy operation because of its high level of prostitution and large number of neighborhood complaints. Bailey was walking along the sidewalk, and Gross was riding his bicycle in the opposite direction on the other side of the street. Gross passed her and then crossed the street, turned around, and rode back to her. After engaging in small talk, he asked Bailey what she was up to. She told him that she was "working." Gross asked how much it would cost, and Bailey replied that that depended on what he wanted. How much for "everything," he asked. Fifty dollars, she said. How about $40, Gross countered. Bailey agreed. Gross left, and Bailey understood that he would come back to meet her later. Bailey then signaled the watching officers to take Gross down.

{¶ 3} Taking the stand in his own defense, Gross testified that he was only flirting with Bailey. He said that he had never seen her before, though he admitted that he believed that she was working as a prostitute. Gross said that they talked for a few minutes and then he continued downtown.

{¶ 4} Gross was charged with loitering to engage in solicitation under R.C. 2907.241(A)(2) and soliciting under R.C. 2907.24(A). After a bench trial in Dayton Municipal Court, the judge found him guilty of both charges. Gross was sentenced to a

60-day suspended jail term on each count, placed on probation for one year, and ordered to attend "John School" and be tested for HIV.

{¶ 5} Gross appealed.

## II. Analysis

{¶ 6} Gross assigns three errors to the trial court. The first and second assignments of error respectively challenge the sufficiency of the evidence and the weight of the evidence. The third assignment of error alleges that the trial court should have merged the convictions.

*Sufficiency and Weight of the Evidence*

{¶ 7} The first assignment of error challenges the sufficiency of the evidence supporting Gross's convictions for loitering to engage in solicitation and soliciting. And the second assignment of error challenges the manifest weight of the evidence supporting the two convictions.

{¶ 8} "To determine whether a conviction is supported by sufficient evidence, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d. 1124, ¶ 12, quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In contrast, "[a] manifest-weight challenge requires us to consider the entire record, including the credibility of the witnesses, the weight of the evidence, and any reasonable inferences and determine whether ' "the [panel] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." ' " *State v. Montgomery*, 148 Ohio St.3d 347, 2016-

Ohio-5487, 71 N.E.3d 180, ¶ 75, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 9} Detective Bailey testified that Gross rode past her on his bicycle, maintaining continuous eye contact with her for half a block. He then turned around and rode back to her. Bailey said that she had never met Gross before. They then engaged in small talk— he told her that he was headed downtown to sell some Xanax. He asked her what she was up to, and she told him that she was "working," "a word," Bailey explained, "that a prostitute will use letting people know that she is actively selling sex for money." (Tr. 12). Gross then asked her where she "takes men to perform sexual actions." (*Id.* at 14). And she told him that she had an "abando, which is an abandoned house, over on St. Paul." (*Id.* at 15). He asked her "how much," which, said Bailey, is "usually a monetary value for how much for a sexual encounter." (*Id.*). Gross asked her if she was a cop, saying that he had not seen her before. Ignoring the question, she asked him what he was looking for. He asked her how much for "everything," which, Bailey said, is a term "mean[ing] anal, vaginal, and oral sex." (*Id.* at 17). She told him that it would be $50. He countered with $40, and she agreed. She then asked Gross if he had any condoms, telling him that she required one for full sex. But she told him that he did not need one for oral sex. Gross then rode off, leaving Bailey with the understanding that he would return after he sold the Xanax downtown.

{¶ 10} Gross testified that he was only flirting with Bailey and just wanted to see what she was up to. But he admitted that he was familiar with the area being frequented by prostitutes and knew "a lot" of prostitutes. (*Id.* at 49). Gross said that he had never

seen Bailey before. Even though Gross had over $40 in cash on him at the time, he said that he wanted her to think that he could get money because he believed that she was a working prostitute. Gross acknowledged that, after Bailey indicated that she was working, she pointed to a direction where she said she would take people. He admitted asking Bailey if she was a police officer, saying that he was "getting that vibe from her." (*Id.* at 57). Gross admitted asking her "how much she charges to do stuff that she does." (*Id.*). And he further admitted that they discussed oral sex and that they negotiated a price:

> A: I've told her that's—I said usually you know I could see paying forty."
>
> * * *
>
> A: You know? To go party or do whatever. Forty but not fifty.

(*Id.* at 59).

{¶ 11} One commits the offense of loitering to engage in solicitation when he "with purpose to solicit another to engage in sexual activity for hire and while in or near a public place * * * [e]ngage[s] or attempt[s] to engage another in conversation." R.C. 2907.241(A)(2). "A person acts purposely when * * *, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶ 12} Here, Gross contends that the evidence does not establish that his purpose in talking to Detective Bailey was to solicit her to engage in sexual activity for hire. We believe that, after viewing the evidence in a light most favorable to the state, a rational trier of fact could disagree. Loitering to engage in solicitation does not require solicitation or consummation, and that Gross had enough money on him means little. Detective Bailey's testimony about the course of her conversation with Gross supports the finding

that his intent in stopping to talk with her was to purchase sexual services from her. And even Gross's own testimony supports finding that he had this in mind. Perhaps he was also trying to flirt with her, but that is not inconsistent with an intention to solicit sex. Viewing the evidence in a light most favorable to the State a rational trier of fact could find the elements of loitering to engage in solicitation are proven beyond a reasonable doubt. We also conclude that Gross' conviction for this offense is not against the manifest weight of the evidence.

{¶ 13} As to the offense of soliciting, one commits this offense when he "solicit[s] another who is eighteen years of age or older to engage with such other person in sexual activity for hire." R.C. 2907.24(A)(1). Gross contends that the evidence does not establish that he solicited Detective Bailey to engage in sexual activity for hire. He also contends that the evidence does not establish that she was at least eighteen years old. As to Bailey's age, the state concedes that the evidence is insufficient to prove that she was at least eighteen years old at the time, because she was never asked her age at trial. Although we find the state's concession curious,[1] we honor it.

{¶ 14} The first and second assignments of error are overruled as to the loitering-to-engage-in-solicitation offense and sustained as to the soliciting offense.

*Merger*

{¶ 15} The third assignment of error alleges that the trial court erred by not merging the two convictions under R.C. 2945.25. Because of the state's concessions regarding

---

[1] While it is true that no direct evidence was presented as to Detective Bailey's age, circumstantial evidence could establish that she was over eighteen. Detective Bailey testified that she had been a police officer for four years. By statute, one must be at least twenty-one years old before actually being appointed a police officer. R.C. 124.41.

the evidence supporting the conviction for soliciting, that conviction must be reversed, which leaves only one conviction. So merger is a moot issue.

{¶ 16} The third assignment of error is overruled.

### III. Conclusion

{¶ 17} The judgment of conviction is reversed as to the conviction for soliciting and affirmed in all other respects. This case is remanded for further proceedings.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies mailed to:

Stephanie L. Cook
Robert Alan Brenner
Hon. Daniel G. Gehres