[Cite as *State v. Embree*, 2022-Ohio-1741.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210463 |
| | | TRIAL NO. B-2102676 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| WILLIAM EMBREE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:   Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: May 25, 2022


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*D. Joseph Auciello, Jr.*, for Defendant-Appellant.

**MYERS, Presiding Judge.**

**{¶1}** Defendant-appellant William Embree appeals the trial court's judgment, following a bench trial, convicting him of carrying a concealed weapon, a fourth-degree felony in violation of R.C. 2923.12(A)(2). He challenges the sufficiency of the evidence supporting his conviction and argues that the trial court erred in finding that he did not present evidence of an affirmative defense. Finding Embree's arguments to be without merit, we affirm the trial court's judgment.

### *Factual and Procedural Background*

**{¶2}** Embree was indicted on charges of carrying a concealed weapon and improperly handling a firearm in a motor vehicle. Prior to a bench trial on these offenses, the parties made the following stipulations to the court: that police came into contact with Embree on May 22, 2021; that an unloaded Smith & Wesson 9 mm firearm was found inside a gun box on the front passenger seat of Embree's vehicle; that the firearm was operable; and that a box of 9 mm ammunition for the firearm was found sitting next to it.

**{¶3}** At the bench trial, Springfield Township Police Officer William Yeager testified that, upon responding to a call regarding a disturbance at a Speedway gas station around 10:30 p.m., he encountered Embree inside his vehicle in the gas station parking lot. Officer Yeager approached the vehicle and spoke to Embree. During their conversation, he noticed what appeared to be a gun box on the vehicle's front passenger seat. He questioned Embree about the box, and Embree responded, "That's my gun." According to Officer Yeager, the gun box was located approximately one-and-a-half to two feet away from Embree and was within Embree's reach. When Officer Yeager opened the passenger door to remove the gun, he noticed a box of 9 mm

ammunition sitting directly next to the gun case in a cup holder. The weapon itself was unloaded, but there were several rounds of ammunition inside the ammunition box. Embree admitted that he did not have a concealed carry license, and he failed to provide the officer with an explanation as to why the firearm and ammunition were in the vehicle.

{¶4} At the close of the state's evidence, Embree made a Crim.R. 29 motion for an acquittal. The trial court granted the motion with respect to the charge of improperly handling a firearm in a motor vehicle, but it overruled the motion with respect to the charge of carrying a concealed weapon.

{¶5} Embree testified on his own behalf, stating that he had not believed he was transporting the firearm unlawfully. He explained that the firearm and ammunition were in the vehicle because he had hoped to get to a gun range earlier that day for target shooting and had forgotten that the items were still in the car. Embree conceded that the gun range was not open at 10:30 in the evening. He additionally testified that he worked as a courier and carried the firearm for safety because he occasionally was required to travel out of state, where he would sleep in his car at rest stops. According to Embree, he told Officer Yeager that he carried the gun with him because of his safety concerns about his job. Embree testified that he was on call 24 hours a day, but that he had remained in the local area near his home on the day of his arrest. Prior to being detained by Officer Yeager at Speedway, Embree had been at his home and at a United Dairy Farmers store.

{¶6} The trial court found Embree guilty of carrying a concealed weapon and sentenced him to one year of nonreporting probation.

***Sufficiency of the Evidence***

{¶7}    In his first assignment of error, Embree argues that the trial court erred in finding him guilty of carrying a concealed weapon. In his third assignment of error, he argues that his conviction was not supported by sufficient evidence. We address these assignments together.

{¶8}    In reviewing a challenge to the sufficiency of the evidence, we must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶9}    Embree was convicted of carrying a concealed weapon in violation of R.C. 2923.12(A)(2), which provides that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand * * * [a] handgun other than a dangerous ordnance." Typically a conviction under R.C. 2923.12(A)(2) is a first-degree misdemeanor. R.C. 2923.12(F)(1). But "if the weapon involved is a firearm that is either loaded or for which the offender has ammunition ready at hand," the offense is a fourth-degree felony. *Id.* Embree was convicted of carrying a concealed weapon as a fourth-degree felony, so in addition to establishing the elements of the offense, the state had to prove that the weapon was either loaded or that Embree had ammunition ready at hand. As Embree's weapon was unloaded, the latter of these additional elements applied in this case.

{¶10}    Embree argues that the state failed to prove that either the firearm or the ammunition was ready at hand. Ascertaining whether an object is ready at hand

requires more than a mere distance formulation. *State v. Davis*, 115 Ohio St.3d 360, 2007-Ohio-5025, 875 N.E.2d 80, ¶ 29. "Rather, it is a factual determination based upon the location of the weapon, the type of weapon, and the location and configuration of the ammunition." *Id.* An object will be considered ready at hand when it is "so near as to be conveniently accessible and within immediate physical reach." *Id.*, quoting *State v. Miller,* 2d Dist. Montgomery No. 19589, 2003-Ohio-6239, ¶ 14; *State v. Jones*, 1st Dist. Hamilton No. C-210309, 2021-Ohio-4331, ¶ 8.

{¶11} In *State v. Beasley*, 1st Dist. Hamilton No. C-810122, 1982 Ohio App. LEXIS 11857 (Jan. 27, 1982), this court considered whether an unloaded firearm was ready at hand when it was found in a vehicle inside a zippered pouch under the front passenger seat. The pouch contained the disassembled components of a revolver and several loose rounds of ammunition. *Id.* at *3. We held that because the firearm "could be made an operable weapon capable of inflicting personal harm or death only by using both hands to unzip the pouch, remove the contents, load the cyclinder [sic], and reassemble the revolver," which would take an appreciable amount of time, it was not ready at hand within the meaning of R.C. 2923.12(A). *Id.* at *5.

{¶12} The Supreme Court of Ohio affirmed this court's decision in *State v. Beasley*, 4 Ohio St.3d 24, 446 N.E.2d 154 (1983). But in *State v. Davis*, 115 Ohio St.3d 360, 2007-Ohio-5025, 875 N.E.2d 80, a case in which a similar argument was made concerning whether a weapon was ready at hand, the court distinguished *Beasley*. In *Davis*, an unloaded semiautomatic handgun and a loaded magazine were found during a traffic stop in an unlocked box next to the defendant's feet. The court found that the handgun was ready at hand. *Id.* at ¶ 29. In distinguishing *Beasley*, it stated, "*Beasley* involved a disassembled revolver with loose rounds in a zippered bag; Davis

5

had a semiautomatic handgun with ammunition already loaded in a magazine. The trial court, as the finder of fact, determined that the handgun was ready at hand, and we will not upset that finding." *Id*. at ¶ 30.

{**¶13**} This court was again confronted with the issue of whether an unloaded firearm and ammunition were ready at hand in *In re Wright*, 172 Ohio App.3d 276, 2007-Ohio-2951, 874 N.E.2d 850 (1st Dist.). In *Wright,* the defendant and an accomplice were stopped for a curfew violation. *Id*. at ¶ 2. An unloaded firearm was found on Wright, and accompanying ammunition was found on his accomplice. *Id*. at ¶ 5. Wright, who was convicted of carrying a concealed weapon as a fourth-degree felony, argued on appeal that the ammunition was not ready at hand. This court rejected his argument. We held that "[f]inding that the ammunition is ready at hand does not require that the ammunition be found on the concealed weapon's carrier. The person carrying the concealed weapon does not have to concurrently be carrying the ammunition on his person to support a conviction for carrying a concealed weapon with ammunition ready at hand." *Id*. at ¶ 9.

{**¶14**} This case is more similar to *Davis* and *Wright* than *Beasley*. Here, the weapon and ammunition were located next to each other and both were within arm's reach of Embree. The record contains no evidence that Embree's weapon was disassembled, as it was in *Beasley*. While Embree speculates on appeal that it would have taken him an appreciable amount of time to load the firearm because he would have first had to load ammunition into a magazine, he offered no testimony on that point at trial and there is nothing in the record to contradict the trial court's finding that the weapon and ammunition were ready at hand.

**{¶15}** Embree additionally argues that his conviction was not supported by sufficient evidence because the trial court stated that it found his testimony credible and his arguments plausible. This argument goes more towards the weight of the evidence than its sufficiency, and we address it below in response to Embree's second assignment of error concerning whether he established an affirmative defense.

**{¶16}** On this record, the trial court could have found the elements of carrying concealed weapon proven beyond a reasonable doubt. Embree's first and third assignments of error are overruled.

### *Affirmative Defense*

**{¶17}** In his second assignment of error, Embree argues that the trial court erred in finding that he did not present evidence of an affirmative defense.

**{¶18}** R.C. 2923.12(C)(1)(c) provides that "[t]his section does not apply to * * * a person's transportation or storage of a firearm, other than a firearm described in divisions (G) to (M) of section 2923.11 of the Revised Code, in a motor vehicle for any lawful purpose if the firearm is not on the actor's person." This exception to carrying a concealed weapon set forth in R.C. 2923.12(C)(1)(c) is an affirmative defense that a defendant bears the burden to prove by a preponderance of the evidence. *State v. Hendrix*, 2019-Ohio-3301, 141 N.E.3d 600, ¶ 19 and 21 (1st Dist.).

**{¶19}** Embree contends that he proved by a preponderance of the evidence that he transported the firearm for two distinct, lawful purposes as contemplated by R.C. 2923.12(C)(1)(c): for target-range practice and for protection in his job as a courier. For purposes of our analysis, we assume, without deciding, that these are in fact, lawful purposes as contemplated by R.C. 2923.12(C)(1)(c).

{¶20} We first address Embree's argument concerning target-range practice. He testified that he had his firearm and ammunition in the car on the day of the offense because he had intended to go to the target range earlier that day, and he later forgot that the items were in his car. However, Embree was stopped with the weapon and ammunition ready at hand at 10:30 in the evening. He conceded that the target range was not open at that time. He also stated that he had been at his home prior to going to another convenience store and then to the Speedway where he was stopped by Officer Yeager. Having been home, he could have removed the weapon and ammunition from his vehicle.

{¶21} In *Hendrix*, 2019-Ohio-3301, 141 N.E.3d 600, we rejected the defendant's argument that he carried a weapon for a lawful purpose based on a finding that the time to carry out the lawful purpose had passed. The defendant in *Hendrix*, who was convicted of carrying a concealed weapon, argued that he carried the weapon in his vehicle for the lawful purpose of protection from wildlife while fishing. *Id*. at ¶ 21. In rejecting Hendrix's argument, we held that "even if the trial court accepted as true Hendrix's purportedly lawful purpose of protection from wildlife while fishing, the court was free to conclude that the stated purpose no longer existed six hours removed from the event when Hendrix operated the vehicle under the influence of alcohol." *Id*.

{¶22} Embree failed to establish by a preponderance of the evidence that he transported the weapon for the lawful purpose of going to a target range to practice shooting. We reach the same conclusion with respect to Embree's argument that he transported the weapon for the lawful purpose of protection in his job as a courier. Embree testified that he was on call as a courier 24 hours a day, and that the job often

took him out of town, where he needed to sleep in his car at rest stops. But he additionally stated that he had remained local the entire day of the offense. The fact that Embree might get called out of town, necessitating an overnight stay at a rest stop, did not give him carte blanche to transport a weapon in his vehicle at all times.

{¶23} In further support of his argument, Embree directs us to statements that the trial court made indicating that it believed Embree's testimony. When rendering a guilty finding, the trial court stated:

> This case poses an interesting situation because I believe everybody involved here.
>
> I don't believe that the defendant was intentionally trying to break the law or was up to anything incredibly nefarious in this situation.
>
> *   *   *
>
> But the fact of the matter is this. His lawful purpose, being that he was trying to go to the gun range earlier that day and he never went, as the prosecuting [attorney] pointed out, it would be impossible for him to go at 10:30 at night. And he had been home and forgot that his gun was in the car. Which, again, even giving him the benefit of the doubt, I do find it unusual that he would have gotten back in that car and not seen a box of ammunition in the cup holder and a gun in a box sitting on the passenger's seat before he left to go to the UDF and the Speedway.
>
> This was hours after any potential target practice. The fact that he is a courier would not excuse an improper—or a carrying a weapon in this manner.

9

**{¶24}** The trial court's statements indicate that although it did not believe Embree intended to transport the firearm unlawfully, he had not proven the affirmative defense of transporting the firearm for a lawful purpose by a preponderance of the evidence. The record supports the trial court's determination.

**{¶25}** Embree's second assignment of error is overruled, and the judgment of the trial court is accordingly affirmed.

Judgment affirmed.

**CROUSE** and **WINKLER, JJ.,** concur**.**

Please note:

The court has recorded its own entry on the date of the release of this opinion.