[Cite as *State v. Andrews*, 2022-Ohio-3802.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210635 |
| | | TRIAL NO. 21CRB-5434 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| SIOBHAN ANDREWS, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Reversed and Appellant Discharged

Date of Judgment Entry on Appeal: October 26, 2022


*Emily Smart Woerner,* Interim City Solicitor, *William T. Horsley*, City Prosecutor, and *Tyler Liston*, Assistant City Prosecutor, for Plaintiff-Appellee,

*Jonathan P. Dameron*, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1}    Following a bench trial on a charge of telecommunications harassment, the trial court convicted defendant-appellant Siobhan Andrews of disorderly conduct, purportedly as a lesser-included offense.  In two assignments of error, Andrews argues that her conviction must be reversed.  Because Andrews's conviction was based upon insufficient evidence, we sustain her first assignment of error, reverse the judgment of the trial court, and discharge Andrews from further prosecution.  Our disposition of Andrews's first assignment of error renders moot her second assignment of error and we decline to address it.  *See* App.R. 12(A)(1)(c).

### Background

{¶2}    At trial, Massiach Hayward testified that beginning in February 2021, he told Andrews, a former friend, that he did not want to speak to her and that she should not contact him.  In August 2021, he again told Andrews not to contact him, and he blocked her on Facebook because "she started saying that I was a rapist."  He testified that he was at a bar in October 2021 when Andrews began cursing and screaming at him, so he left the bar.

{¶3}    About a week later, on October 22, 2021, Andrews tried to speak to Hayward when they were at a bar, but he told her to leave him alone.  Hayward said that one of Andrews's friends assaulted him and was arrested by police.

{¶4}    After Hayward got home that night, Andrews tried to call him eight times within a few minutes, but Hayward did not answer.  Andrews also posted on her Facebook page: "RAPIST!!!!! Massiach Hayward * * * Ask Montgomery Teas[.]"  Someone identified as Da Yehster replied, "Whoa[.]"

{¶5}    Then Andrews and Da Yehster engaged in the following exchange:

[ANDREWS]:  Da Yehster[,] done playing.  I want to fight

[DA YEHSTER]:  * * * so he raped shorty? I know that's wat us said I just need clarity

2

[ANDREWS]: Da Yehster[,] attempted to. Ripped her shirt. Hold on I have proof. Plus tried to jump my best friend tonight. Got beat up then the cops showed up and he's the one filing assault charges. I want to fight

**{¶6}** Hayward testified that someone sent him Andrews's posts because he had previously blocked her on Facebook. When he was asked how Andrews's posts and attempted contacts made him feel, Hayward replied:

Threatened and that my life was in jeopardy. I had just been assaulted that night from her best friend. [Andrews] was calling me * * *. And on the Facebook post she said that I was a rapist. She put my name on there and said that she wanted to fight me after I had already been assaulted that night.

Hayward testified that what Andrews posted about him was not true.

**{¶7}** In her defense, Andrews testified that Hayward had never told her not to call him. She admitted that she tried to call him eight times in a row that night because he had just assaulted her friend. She testified that she posted on Facebook that Hayward was a rapist to warn the public that "there was an active rapist and domestic violence person that was on the loose and that was Mr. Hayward." She said that her purpose in making the calls and in posting on Facebook was not to harass Hayward. She testified that her "I want to fight" remarks on her Facebook page stemmed from her feeling frustration, aggravation, and a need for clarity about the accusations that had been made against Hayward, her former friend. Andrews testified that her Facebook posts were made on her own page and that she did not send them or message them to Hayward or post them on his Facebook page. She admitted that she knew that her posts "would get back to him."

**{¶8}** The trial court considered the three telecommunications by Andrews, which included the eight telephone calls in a row, the Facebook post stating the word "rapist" followed by Hayward's name, and the two references in her Facebook posts to

3

"I want to fight." The court determined that none of them rose to the level of telecommunications harassment under R.C. 2917.21(B)(1), which prohibits a person from making a telecommunication "with purpose to abuse, threaten, or harass another person." In addressing the "I want to fight" posts, the court noted that the offense of telecommunications harassment required proof that the defendant's specific purpose is to abuse, threaten, or harass. The court said:

> Keeping in mind that the court has to find guilt beyond a reasonable doubt and that the threat must be made with a specific purpose, my interpretation of a general statement of I want to fight without something more specific in this case doesn't rise to the level of threatening.

{¶9} The court found Andrews not guilty of telecommunications harassment but found her guilty of disorderly conduct in violation of R.C. 2917.11(A)(1), purportedly as a lesser-included offense. R.C. 2917.11(A)(1) provides: "No person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [e]ngaging in fighting, threatening harm to persons or property, or in violent or turbulent behavior." The court found that Andrews acted recklessly and that she caused inconvenience, annoyance, or alarm by threatening harm to persons or property.

### *Sufficiency of the Evidence*

{¶10} In her first assignment of error, Andrews challenges the sufficiency of the evidence supporting her conviction for disorderly conduct in violation of R.C. 2917.11(A)(1). In reviewing the sufficiency of the evidence, we must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶11} Andrews challenges the trial court's finding that her Facebook posts stating "I want to fight" constituted a threat of harm to persons or property, as required for disorderly conduct under R.C. 2917.11(A)(1). As she points out, she did not say she wanted to fight Hayward or anyone else, and she did not send the posts to him. Even considering the context of her posts that identified Hayward as a person that had allegedly assaulted two of her friends, her multiple calls to him within minutes, and her admission that she knew the posts would "get back to" Hayward, we cannot say that Andrews threatened harm to Hayward. And the trial court did not think so either because it stated, "[M]y interpretation of a general statement of I want to fight without something more specific in this case doesn't rise to the level of threatening."

{¶12} Because we agree with the trial court that Andrews's "I want to fight" posts on Facebook did not "rise to the level of threatening," we hold that the essential element of "threatening harm to persons or property" required for a conviction under R.C. 2917.11(A)(1) was not proven beyond a reasonable doubt. Therefore, Andrews's conviction for disorderly conduct under R.C. 2917.11(A)(1) was based upon insufficient evidence. While Andrews's conduct may have been actionable under some other theory, it did not meet the elements of disorderly conduct under R.C. 2917.11(A)(1).

{¶13} Accordingly, we sustain the first assignment of error, reverse the judgment of the trial court, and discharge Andrews from further prosecution. Because this is dispositive of the appeal, the second assignment of error is moot and we decline to address it.

Judgment reversed and appellant discharged.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its own entry this date.

5