[Cite as *In re D.L.*, 2026-Ohio-296.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE: D.L.

Case No. 2025 CA 00069

<u>Opinion And Judgment Entry</u>

Appeal from the Richland County Court of
Common Pleas, Juvenile Division, Case
No. 2020 DEP 00092

Judgment:   Affirmed

Date of Judgment Entry:January 30, 2026

**BEFORE:**   CRAIG R. BALDWIN, P.J., KEVIN W. POPHAM, J., DAVID M. GORMLEY
Appellate Judges

**APPEARANCES:** SARAH E. EXTEN, for Richland County Children's Services;
WESLEY A. JOHNSTON for Mother

OPINION

*Popham, J.,*

{¶1}   Appellant-mother ("Mother") appeals the August 28, 2025, Judgment Entry of the Richland County Court of Common Pleas, Juvenile Court Division, which overruled her objections to the magistrate's April 14, 2025, decision terminating her parental rights and granting permanent custody of her minor child Dylan (D.L.) to appellee, Richland County Children Services ("RCCS").

**Initiation of the Case**

{¶2}   On June 8, 2020, RCCS filed separate complaints alleging that Child 1 (Domenic - born July 24, 2009) and Child 2 (Dylan - born February 19, 2013) were

dependent, neglected, and/or abused. Mother is the biological mother of both children. The biological father, W.L. ("Father"), is not a party to this appeal.

{¶3} In support of the complaints, RCCS alleged unsafe and unsanitary living conditions caused by hoarding, the children's significant special needs, and Mother's refusal to engage in mental-health services. Caseworker Christina Jackson averred that Mother was argumentative and refused RCCS access to the home.

{¶4} On June 10, 2020, the juvenile court ordered Mother not to leave the court's jurisdiction. At the adjudicatory hearing on July 2, 2020, both parents stipulated to findings of dependency.

### Protective Supervision and Custody Changes

{¶5} On August 14, 2020, the parents stipulated to RCCS protective supervision while the children remained in Mother's custody. The court approved the stipulation by Judgment Entry dated August 27, 2020.

{¶6} Temporary custody was later granted to Father in 2020, and ultimately on July 26, 2023, temporary custody was returned to RCCS after conditions failed to improve.

### Case Plans

{¶7} RCCS submitted a case plan dated May 7, 2020, which the court approved on August 21, 2020. A substantially similar plan dated September 9, 2022, was approved on October 4, 2022. Both plans required the parents to:

Address mental-health needs through evaluation and treatment;

Complete parenting education;

Provide for the children's medical and special-education needs; and

Maintain a clean, sanitary, and organized home environment.

**{¶8}** Despite years of agency involvement, the parents failed to meaningfully comply with these requirements.

**{¶9}** On July 3, 2024, RCCS filed motions for permanent custody of both children.

**Permanent Custody Hearing**

**RCCS and Service Provider Testimony**

**{¶10}** Ongoing caseworker Shannon Thompson testified that RCCS had been involved with the family since 2018 and that the complaints were filed after two years of noncompliance. Both children have severe autism and significant special needs.

**{¶11}** Thompson testified that Mother never completed parenting education and consistently refused mental-health counseling. The home conditions were persistently unsafe, including rotting food, garbage, and feces throughout the residence. Over the course of the case, the family lived in a motel, with relatives, in a garage, a camper, and a tent. Neither parent maintained employment.

**{¶12}** Thompson further testified that at the time of removal, Child 1 required near-total dental extraction due to severe decay. Mother's medical conditions—including diabetes resulting in the amputation of her lower leg—further impaired her ability to meet the children's needs. Thompson described Mother as frequently argumentative and verbally abusive toward caseworkers and service providers.

**{¶13}** CASA (Court Appointed Special Advocate) Andrea Golias corroborated this testimony, stating that Mother refused services designed to teach parenting strategies for autistic children, rejected mental-health treatment, and regularly cursed case workers or

abruptly ended meetings. Golias described the home conditions in 2018 as the worst she had ever encountered.

**{¶14}** Golias testified that both children had significantly improved in their current placements: Child 2 was thriving in foster care, and Child 1 was making progress in a structured group-home setting.

**{¶15}** Trevor Bender, a court services support administrator, testified that during home visits he observed hazardous conditions, including accessible medications, knives, feces, overwhelming odors, squatters in the basement, and children running unsupervised into the roadway. He testified that the children were not potty trained while living with their parents but achieved potty training after removal. Providers eventually refused services due to hygiene concerns and parental hostility.

**{¶16}** ViaQuest[1] staff testified that both children demonstrated regression in behavior following parental visits but made substantial developmental gains in structured placements. Multiple witnesses confirmed improvements in communication, self-care, and emotional regulation after removal from parental custody.

**Parental Testimony**

**{¶17}** Father testified that he was unemployed, relied on the children's disability benefits, and acknowledged unstable housing. He admitted Mother could not care for the children without assistance and conceded that he interfered with Mother's medical treatment.

**{¶18}** Mother testified that she suffers from diabetes, PTSD, and depression, and acknowledged refusing mental-health counseling and failing to complete autism-specific

---

[1] ViaQuest is a service provider for behavioral and mental health, and developmental disabilities.

parenting programs. Medical records demonstrated Mother's repeated noncompliance with her doctors' treatment recommendations. Mother admitted the family lived in a tent following her surgery and testified she did not remember the case plan requirements.

{¶19} Mother expressed a desire to retain parental rights to at least one child and acknowledged that the children could not safely be placed together.

**Children's Progress in Placement**

{¶20} Following removal, both children made substantial and sustained progress. Child 1, placed in a structured group home, became potty trained, improved his communication skills—including learning American Sign Language—and demonstrated increased emotional regulation. Child 2, placed in foster care, made progress with hygiene, schooling, and daily routines.

{¶21} Multiple witnesses testified that both children regressed behaviorally following parental visits but thrived in their placements. Caregivers consistently described the children as happier, safer, and better able to function outside parental custody.

**Magistrate's Decision**

{¶22} On April 14, 2025, the magistrate issued detailed findings of fact and granted permanent custody of both children to RCCS. Mother filed objections on July 1, 2025. The juvenile court overruled the objections and adopted the magistrate's decision by Judgment Entry dated August 28, 2025[2].

**Assignment of Error**

{¶23} Mother raises one assignment of error,

---

[2] The magistrate issued separate Findings of Fact/ Conclusions of Law for each child under the respective case number for that child, and the trial judge issued separate judgment entries under each case number.

{¶24} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY TERMINATING MOTHER'S PARENTAL RIGHTS OF [THE CHILDREN] AND GRANTING PERMANENT CUSTODY OF [THE CHILDREN] TO RICHLAND COUNTY CHILDREN SERVICES (RCCS)."

**Fundamental Rights and Governing Standards**

{¶25} A parent's right to raise a child is an "essential" and "basic" civil right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645 (1972). The interest in the care, custody, and management of one's child is therefore fundamental. *Id.*; *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). Because permanent termination of parental rights has aptly been described as "the family law equivalent of the death penalty," parents must be afforded every procedural and substantive protection the law allows. *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist. 1991). Accordingly, a juvenile court's award of permanent custody must be supported by clear and convincing evidence. R.C. 2151.414(B)(1).

**Standard of Review**

{¶26} The Supreme Court of Ohio has clarified that appellate review of permanent-custody determinations under R.C. 2151.414 proceeds under the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, depending on the nature of the arguments raised. *In re Z.C.*, 2023-Ohio-4703, ¶ 18. Here, Mother challenges both.

**Sufficiency of the Evidence**

{¶27} Sufficiency of the evidence presents a question of law, which we review de novo. *State v. Walker*, 2016-Ohio-8295, ¶ 30; *State v. Jordan*, 2023-Ohio-3800, ¶ 13.

Sufficiency is a test of adequacy—whether the evidence, if believed, permits the factfinder to reach the challenged conclusion as a matter of law. *In re Z.C.* at ¶ 13, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

**{¶28}** Where, as here, the governing burden of proof is clear and convincing evidence, the reviewing court examines the record to determine whether the juvenile court had before it sufficient evidence from which it could form a firm belief or conviction that the statutory requirements for permanent custody were met. *In re Estate of Haynes*, 25 Ohio St.3d 101, 103–104 (1986); *In re Z.C.* at ¶¶ 7–8; *In re L.A.*, 2024-Ohio-3436, ¶ 59 (5th Dist.).

**Manifest Weight of the Evidence**

**{¶29}** Manifest-weight review concerns the persuasive effect of the evidence. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. In conducting this review, we consider whether the trier of fact clearly lost its way in resolving evidentiary conflicts, resulting in a manifest miscarriage of justice—even where the evidence is legally sufficient. *Thompkins*, 78 Ohio St.3d at 386–387.

**{¶30}** Although an appellate court may act as a "thirteenth juror," we afford substantial deference to the trial court's credibility determinations, given its superior position to observe the witnesses. *Eastley* at ¶ 21; *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). A manifest-weight challenge succeeds only in the exceptional case where the evidence weighs heavily against the judgment. *Thompkins* at 387.

**Statutory Framework for Permanent Custody**

**{¶31}** R.C. 2151.414 establishes a two-pronged inquiry for permanent custody. The juvenile court must find, by clear and convincing evidence, (1) that one of the

circumstances set forth in R.C. 2151.414(B)(1)(a) - (d) applies, and (2) that granting permanent custody is in the child's best interest.

**{¶32}** Here, the trial court found that R.C. 2151.414(B)(1)(d) applied to Child 2 and further determined, in the alternative, that R.C. 2151.414(B)(1)(a) was satisfied for both children.[3] Either finding—when coupled with a best-interest determination—is independently sufficient to support an award of permanent custody. *In re Dalton*, 2007-Ohio-5805 (5th Dist.); *In re K.C.*, 2024-Ohio-2081, ¶ 45 (10th Dist.).

**Temporary Custody for Twelve of Twenty-Two Months**

**R.C. 2151.414(B)(1)(d)**

**{¶33}** With respect to Child 2, the juvenile court expressly found that the child had been in the temporary custody of RCCS for more than twelve months of a consecutive twenty-two-month period at the time the agency filed its motion for permanent custody. *Magistrate's Decision, Aug. 28, 2025, Case No. 2020-DEP-0092*, ¶ 14.

**{¶34}** The "12-of-22" provision reflects the legislature's deliberate balance between reunification efforts and the child's need for timely permanence. *In re C.W.*, 2004-Ohio-6411, ¶ 22. Once the statutory time has elapsed, the focus properly shifts from parental opportunity to the child's need for stability. *Id.* at syllabus.

**{¶35}** Mother does not challenge the juvenile court's twelve-of-twenty-two-month finding with respect to Child 2. Accordingly, this finding alone—when coupled with a best-interest determination, supports the award of permanent custody for Child 2, and our

---

[3] The court found that Child1 had not been out of the care and custody of his parents for 12 months out of the previous 22 months when RCCS filed its motion for permanent custody. Aug. 28, 2025, Magistrate's Decision, Case No. 202-DEP-0091, ¶14.

analysis could properly end there. *In re Calhoun*, 2008-Ohio-5458 (5th Dist.); *In re: K.C.,* 2024-Ohio-2081, ¶45 (10th Dist.).

**Placement with Mother Within a Reasonable Time**

**R.C. 2151.414(B)(1)(a)**

**{¶36}** Nevertheless, the juvenile court also determined that the children cannot be placed with Mother within a reasonable time or should not be placed with her, pursuant to R.C. 2151.414(B)(1)(a). That determination is likewise supported by clear and convincing evidence.

**{¶37}** Under R.C. 2151.414(E), if the court finds that any one of the enumerated factors exists as to a parent, it must conclude that the child cannot or should not be placed with that parent within a reasonable time. *In re William S.*, 75 Ohio St.3d 95 (1996).

**{¶38}** Here, the record amply supports the court's findings under R.C. 2151.414(E)(1) and (2). Despite more than four years of agency involvement, extensive case-planning, and the provision of services, Mother failed continuously and repeatedly to remedy the conditions that led to removal. The juvenile court found—and the evidence confirms—that Mother consistently refused to engage in mental-health treatment and rejected services designed to address the children's autism. Service providers and caseworkers testified that Mother was frequently hostile, verbally abusive, and uncooperative, often ending meetings prematurely. Providers eventually declined to continue services due to parental conduct and ongoing hygiene concerns.

**{¶39}** Mother's medical conditions further limited her ability to meet the children's needs. Medical records admitted at trial documented repeated noncompliance by Mother

with her follow-up care. Mother admitted she did not recall the requirements of the case plan and conceded that she declined participation in recommended services.

**{¶40}** Father testified that Mother could not care for the children without assistance and acknowledged unstable housing and lack of income. He admitted engaging in conduct that interfered with Mother's medical treatment.

**{¶41}** The court specifically noted that Mother "doggedly, and at times angrily, resisted" RCCS's efforts to involve her in mental-health counseling. The record further demonstrates that any marginal progress was inconsistent, short-lived, and insufficient to address the underlying concerns.

**{¶42}** Completion—or partial completion—of a case plan does not itself preclude permanent custody. A case plan is a means to an end, not the end itself. *In re J.L.*, 2004-Ohio-6024, ¶ 20 (8th Dist.). Where, as here, the problems that precipitated removal persist despite services, the court does not err in finding that reunification is not reasonably achievable. *In re Summerfield*, 2005-Ohio-5523 (5th Dist.); *In re K.C.*, 2024-Ohio-2081, ¶ 56 (10th Dist.).

**{¶43}** Although the record reflects that Mother loves her children, love alone does not overcome years of noncompliance, instability, and unmet special needs. The evidence supports the juvenile court's conclusion that Mother has made virtually no sustained progress since RCCS's initial involvement in 2018, and that additional time would not alter that reality.

**{¶44}** Accordingly, we conclude that competent, credible evidence supports the juvenile court's finding that the children cannot be placed with Mother within a reasonable time or should not be placed with her.

**Best Interest of the Children — R.C. 2151.414(D)**

**{¶45}** When determining whether permanent custody is in a child's best interest, a juvenile court must consider all relevant factors, including those set forth in R.C. 2151.414(D)(1). No single factor is dispositive; rather, the court must weigh the totality of the circumstances. *In re Schaefer*, 2006-Ohio-5513, ¶ 56.

**Interaction and Interrelationship — R.C. 2151.414(D)(1)(a)**

**{¶46}** The evidence demonstrated that the children's interactions with their parents were destabilizing rather than beneficial. Multiple witnesses testified that both children regressed behaviorally following parental visits, often requiring days to reestablish routine and emotional regulation. These regressions were particularly concerning given the children's severe autism and need for consistency.

**{¶47}** In contrast, both children formed stable and supportive relationships in their placements. Child 1 showed significant improvement in communication, hygiene, and behavioral regulation in his structured group-home setting. Child 2 demonstrated progress in daily living skills and schooling while in foster care. The record reflects that these placements provided predictability, structure, and specialized care the children require—conditions that were never achieved in parental custody.

**Wishes of the Children — R.C. 2151.414(D)(1)(b)**

**{¶48}** Due to their ages and developmental limitations, the children were unable to meaningfully express their wishes. The trial court therefore appropriately relied on the recommendations of the CASA, who supported permanent custody after observing the children's needs, progress, and parental limitations.

**Custodial History — R.C. 2151.414(D)(1)(c)**

**{¶49}** The children have been subject to agency involvement since 2018 and removed from parental custody for an extended period. Despite years of intervention, services, and repeated opportunities to remedy the conditions leading to removal, the parents failed to achieve or maintain a safe, stable, and sanitary home or to meet the children's medical and developmental needs. The length and continuity of this custodial history weigh heavily in favor of permanency.

**Need for a Legally Secure Permanent Placement — R.C. 2151.414(D)(1)(d)**

**{¶50}** The record overwhelmingly establishes that the children require a legally secure placement that can provide long-term stability and address their significant special needs. Neither parent demonstrated the ability or willingness to provide such an environment.

**{¶51}** Mother refused mental-health treatment, declined autism-specific parenting services, failed to complete further parenting education, and remained noncompliant with medical recommendations. Housing instability persisted throughout the case, and neither parent maintained employment nor a viable plan for independent support. Father acknowledged that Mother could not care for the children without assistance and Mother conceded that the children could not safely be placed together.

**{¶52}** The children's dramatic improvement following removal underscores the necessity of permanence. The juvenile court reasonably concluded that reunification was not achievable within a reasonable time and that only permanent custody could provide the stability these children require.

**Additional Relevant Factors — R.C. 2151.414(D)(1)(e)**

**{¶53}** The court also considered the parents' demonstrated lack of commitment, as evidenced by repeated refusals to engage in services, hostile interactions with providers, and failure to prioritize the children's basic needs. Despite extensive assistance from RCCS, the parents made no meaningful progress toward reunification.

**Conclusion**

**{¶54}** Considering the totality of the evidence and each factor under R.C. 2151.414(D), the record clearly supports the juvenile court's determination that granting permanent custody to RCCS was in the children's best interest. The children's need for safety, stability, and specialized care—needs that were met only after removal—outweigh the parents' expressed desire to maintain parental rights.

**{¶55}** We find that the trial judge correctly found that Child 2 had been in the temporary custody of RCCS for over twelve months of a consecutive 22-month period.

**{¶56}** We further find the trial judge's determination that Mother had failed to remedy the issues that caused the initial removal, and, therefore, the children could not be placed with her within a reasonable time, or should not be placed with her, was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶57}** We further find that the trial court's decision that permanent custody to RCCS was in the children's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶58}** Because the evidence in the record supports the trial judge's judgment, we overrule Appellant-Mother's assignment of error and affirm the decision of the Richland County Court of Common Pleas, Juvenile Division.

For the reasons stated in our Opinion, the judgment of the Richland County Court of Common Pleas, Juvenile Division is affirmed.  Costs to Appellant-Mother.

By: Popham, J.

Baldwin, P.J. and

Gormley, J., concur